HEGE ET AL. *v.* NEWSOM ET AL.

[No. 13,712.   Filed February 19, 1930.   Rehearing denied September 4, 1930.   Transfer denied June 30, 1933.   Petition to reconsider denied October 6, 1933.]

*Baker & Richman* and *Montgomery & Montgomery,* for appellant.

*Rynerson, Shinn & Sharpnack, Edward P. Elsner, W.*

*C. Duncan* and *Anderson, Mayfield & Rynerson,* for appellees.

LOCKYEAR, J.—The appellee, Nathan H. Newsom, was the owner of a farm in Bartholomew county where he lived with his family, which included his son, Paul.

On the farm was an old unoccupied house in which it was agreed the son should live as he was about to be married and was desirous of establishing a home for himself. The house was in need of repairs. The son, Paul, employed the appellants to make the repairs and at the time in question had, as appellees say in their brief, performed the contract to the extent of $978, but had not yet finished their work. The father, Nathan H. Newsom, had contracted with the appellants to do some other work on the house and at the time in question had performed work on the house for Nathan H. Newsom to the extent of $304.21. The appellants claim that the amount of work done for the son, Paul, at this time was $1,053 and the amount of work to this date for the father was $304.21.

The complaint in this action charges that on the 19th day of October, 1926, before the repairs were completed, while workmen, servants and agents of the appellants were working in said house, they carelessly and negligently built a fire in said house in the place where a fireplace was to be located, before the same was completed and thereby caused the said house to catch on fire and to be destroyed to the damage of the appellees.

The house was insured by the appellee, The Farmers Mutual Insurance Company of Bartholomew County, for $2,000, which amount it paid to the appellee Newsom and it was a party plaintiff in the action below on account of its rights of subrogation.

The appellants filed a cross-complaint asking judgment for the sum of $425 against Nathan Newsom for the amount he owed for repairs on the house and asked

that summons be issued against Paul Newsom, the son, and that a judgment be rendered against him for $1,100, the amount Paul owed appellants for repairs.

A motion to strike out the cross-complaint was filed by the appellees and sustained by the court.

The appellants filed an answer in general denial to the complaint and the case was tried before a jury who rendered a verdict against the appellants in favor of the insurance company in the sum of $2,283.06 and in favor of the appellee, Newsom, in the sum of $1,295.84.

Judgments for said amounts were rendered in harmony with the verdict from which this appeal is prosecuted.

The errors assigned, upon which the appellants rely, and properly presented relate to the court's action in sustaining the motion of the appellee to strike out the cross-complaint, and in the giving of certain instructions and in refusing to give certain instructions tendered by the appellants.

The appellants' cross-complaint against Nathan H. Newsom and Paul Newsom alleges Nathan H. Newsom was the owner of the lands described in the plaintiff's complaint; that the appellee, Paul Newsom, is the son of Nathan H. Newsom. The son was soon to be married; the father and son entered into some kind of a contract between themselves by which the son after marriage was to occupy said property and to acquire an interest therein, the exact nature and extent of which is unknown to these cross-complainants; that in pursuance of said agreement, it was agreed by and between the father and son that certain repairs, additions and improvements should be made upon the dwelling house in question, the price of which it was then agreed the son should pay $1,053 and the father $304.21 as set out in a bill of particulars filed with the cross-complaint. That in pursuance of said agreement, the cross-complainants

entered upon said work, furnished the material and performed the labor specified herein with the exception of the unfinished work aggregating $75; that during the progress of said work, said cross-complainants, at the request of Nathan H. Newsom and by the consent of his son, made said other improvements to the residence, for $304.21; that thereafter, before said work had been completed, in the absence of the cross-complainants and without any fault on their part, said building, including said additions and improvements thereon was accidentally destroyed by fire, which additions at the time of said fire were of the fair and reasonable value of $1,400. That the said Nathan Newsom and his son, Paul Newsom, have abandoned their contract with them and entered into a contract with another party to erect a new building in place of the one destroyed, and they say there is now due the appellants herein the sum of $425 from Nathan H. Newsom and $1,100 from Paul Newsom, for which amounts they ask judgment.

The appellee filed a motion to strike out said cross-complaint for the reason that the subject matter of the complaint sounds in tort, that the parties are not the same, that Paul Newsom is a new party being made a party defendant to the cross-complaint; that the matters set up are not essential to the matters contained in litigation by the complaint; that it pleads two demands, one against Paul Newsom and one against Nathan H. Newsom and that the amount due from Nathan H. Newsom cannot be set off against any damages he may have sustained. The motion was sustained by the trial court with exception to the appellants and is assigned as error in this cause.

Sec. 373, Burns 1926, (§122, Baldwin's 1934), defines a counterclaim to be any matter arising out of or connected with the cause of action which might be the subject of an action in favor of the de-

fendant or which tends to reduce the plaintiff's claim or demand for damages.

In the case of *Standley* v. *North Western Mutual Insurance Co.* (1883), 95 Ind. 254, Judge Elliot, speaking for the court, says, "Our decisions have invariably treated the counterclaim as proper only in cases where the subject matter of the counterclaim is connected with the original cause of action, and have refused to permit the defense of counterclaim where the matter relied on was an independent one having no connection with the subject of the original complaint."

In *Douthitt* v. *Smith* (1880), 69 Ind. 463, it was said, "What is now in this state very commonly denominated a cross-complaint is practically synonymous with a cross bill in chancery practice and is, under our present code technically a counterclaim." In an early code case, it was said, "A counterclaim is that which might have arisen out of or could have had some connection with the original transaction, in view of the parties, and which at the time the contract was made, they could have intended might, in some event, give one party a claim against the other for compliance or noncompliance with its provisions." *Conner* v. *Winton* (1856), 7 Ind. 523.

The cases of *Sterne* v. *McKinney* (1881), 79 Ind. 578 and *Sterne* v. *First National Bank* (1881), 79 Ind. 560, decide that where the matters set forth in the counterclaim or cross-complaint are not connected with the matters alleged in the complaint, it is not error to dismiss the cross-complaint or counterclaim on the motion of the plaintiff.

Liberal as our decisions have been in giving to the counterclaim a comprehensive force and effect, they have firmly held to the cardinal principle that there must be come legal or equitable connections between the matters pleaded as a counterclaim and the matters alleged

in the original complaint. *Shelly* v. *Vanarsdol* (1864), 23 Ind. 543; *Grimes* v. *Duzan* (1869), 32 Ind. 361; *Campbell* v. *Routt* (1873), 42 Ind. 410; *White* v. *Miller* (1874), 47 Ind. 385; *Hinkle* v. *Margerdum* (1875), 50 Ind. 240; *Thompson* v. *Toohey* (1880), 71 Ind. 296; *Washburn* v. *Roberts* (1880), 72 Ind. 213; *Williams* v. *Boyd* (1881), 75 Ind. 286.

It is not enough that the parties are the same, or that the transactions were made on the same day; there must be a recognized legal relation between the matters pleaded as a counterclaim and those pleaded in the original complaint. There must be some legal (using the word legal in its broad signification) relationship between the ground of recovery alleged in the counterclaim and the matters alleged as the cause of action by the plaintiff. *Tabor* v. *Mackkee* (1877), 58 Ind. 290; *Grimes* v. *Duzan, supra; Emily* v. *Harding* (1876), 53 Ind. 102; *Woodruff* v. *Garner* (1886), 27 Ind. 4; *Gilpin* v. *Wilson* (1876), 53 Ind. 443; *Gossard* v. *Ferguson*, 54 Ind. 519; *Stillwell* v. *Chappell*, 30 Ind. 72.

In *Brower et al.* v. *Nellis* (1892), 6 Ind. App. 323, it was held that "Matters ex delicto may be pleaded to matters ex delicto, and matters ex contractu to matters ex contractu, but matters ex delicto cannot be pleaded to matters ex contractu nor vice versa, unless it appears that the matter stated in the complaint and the counterclaim arose out of the same transaction, and such transaction relates to a contract of some kind between the parties. If the subject matter be of that character in which the plaintiff may elect to proceed either in tort or contract, his election will not deprive the defendant of his right to plead his counterclaim, although tort and contract may be arrayed against each other in the same action." *Standley* v. *North Western, etc., Ins. Co. supra; Terre Haute, etc., R. R. Co.* v. *Pierce* (1884), 95 Ind. 496, but an independent tort cannot be made a defense against another tort by way of a set-off or counter-

claim. The word transaction used is not synonymous for occurrence or accident. *Lake Shore, Michigan and Southern Ry. Co.* v. *Van Auken* (1891), 1 Ind. App. 492, 27 N. E. 119; *Terre Haute Indianapolis Ry. Co.* v. *Pierce, supra; Avery* v. *Dougherty* (1885), 102 Ind. 443, 2 N. E. 123; *Lovejoy* v. *Robinson* (1856), 8 Ind. 399; *Schalback* v. *Jones* (1857), 9 Ind. 470; *Shelly* v. *Vanarsdol, supra.*

The case of *Block* v. *Suango* (1894), 10 Ind. App. 601, where an action sounds in tort for the value of the personal property alleged to have been unlawfully converted by the defendant to his own use, the defendant cannot plead thereto matters arising out of and pertaining to a contract, which could have no connection with or dependence upon the act of conversion.

In the case of *McMahan* v. *Spinning* (1875), 51 Ind. 187, it was held, "To an action for work and labor and materials, an answer claiming damages for a failure to abide by an award of arbitrators, to whom the matter of difference had been submitted, is not good as a counterclaim."

In the case of *Harris* v. *Randolph County Bank* (1901), 157 Ind. 120, 60 N. E. 1025; "The first paragraph of complaint sounds in tort, and the rule is well settled in this state that the claim or demand arising out of tort cannot be pleaded as a set-off against a cause arising out of contract, for it is well settled that matters which are pleaded by the defense as a counterclaim must be connected in a legal sense with the subject of the original action, or with the transaction out of which it arose." *Sterne* v. *First National Bank, supra; Standley* v. *North Western Ins. Co., supra,* and cases there cited.

Our attention is called to the analogy of this case to the cases of malpractice against physicians, but as has been said in *Kuhn* v. *Vaugh* (1878), 64 Ind. 90, an action for malpractice that sounds in tort is founded

upon a contract. The case of *Griffin* v. *Moore* (1875), 52 Ind. 295, was an action against the caretaker of a livery and feed stable who had been employed by the plaintiff to keep, feed and take care of his horse to recover for an injury to the horse occasioned by the bailee's failure to take proper care of the animal, wherein the leg of the horse was broken; it was held that the defendant may set up by way of counterclaim indebtedness of the plaintiff to defendant for the keeping and care of the horse under said contract. To the answer setting up the plaintiff as indebted to the defendant for the keep and care of the horse, a demurrer was filed and the objection is that the complaint is for tort and not founded upon the contract. All the court says is that this objection is wholly untenable. The opinion was written by Pettit, J., and Warden, J., at the close of the opinion, says, "I think if the first paragraph of the complaint be conceded to be in contract, still the second clearly sounds in tort, therefore the counterclaim could not be pleaded to both paragraphs."

We recognize that the courts in some cases have gone far in allowing counterclaims to be filed in order to prevent a multiplicity of actions, and it is often difficult to follow the reasons given by the court for so doing and at the same time comply with the statute in reference to counterclaims.

Under the authorities cited above, we are of the opinion that the court did not err in striking out the appellant's counterclaim. The original complaint sounds in tort pure and simple and was filed by the appellee Nathan H. Newsom against the appellants.

The cross-complaint states one cause of action against Nathan H. Newsom and another cause of action against Paul Newsom and the matters set out are not sufficiently connected with the tort alleged in the original complaint to meet the statutory definition of a counterclaim, and

we believe justice can be administered in this case in a better manner by allowing the action of the court in striking out the counterclaim to stand.

The appellants in this cause could not be harmed by the action of the court in striking out the cross-complaint for the reason that in order for the jury to arrive at the verdict that was returned in this case, they must have found that the fire was caused by the negligence of the appellants and their servants and if such negligence of appellants caused the fire, there could be no recovery on their part, therefore the appellants were not harmed by striking out the cross-complaint.

Error is properly assigned that the verdict of the jury is contrary to law and that the amount of recovery is too large.

Error is also assigned of the instructions given by the court in regard to the measure of damages as given in instruction No. 5 given by the court; the court says, "The measure of damages in this case, if you find for the plaintiffs, is the difference between the fair market value of the real estate, including the buildings and trees thereon, immediately prior to the fire and their fair market value immediately after the fire, and also the fair market value of the personal property destroyed."

The appellants requested the court to give the following instruction as to the measure of damage which instruction was refused and reads as follows: "It is in evidence that the defendants had, prior to said fire made improvements and repairs upon the house which was destroyed by fire, either upon contract with Nathan H. Newsom or with his son Paul R. Newsom, with the consent of his father and that the defendants have not received pay for such improvements and repairs. You are therefore instructed that in case you should find for the plaintiff, Nathan H. Newsom in this case, in esti-

mating the value of the loss and property destroyed, you should not take into account the value of such repairs and improvements as were made by the defendants, and for which they have received no pay, nor an enhancement in the value of the old house resulting from the making of such improvements and repairs."

It is true that it is a general rule of law that the measure of damages for destruction of property by fire is the value of the property immediately before the fire, but in this case, we have a peculiar situation. Here is an old house insured by the appellee insurance company before any repairs were being placed on it. The appellants were in the process of adding work, material and labor to said house and in increasing it in value for which the appellee Newsom and his son would become liable upon the acceptance of said work by them. They had not accepted this work, and not having accepted the work, we cannot see how in justice to all parties to this action, the appellee Nathan H. Newsom could recover an amount more than the value of his house before the repairs were made.

The fire may have been caused by the negligence of appellant's own servants, but they nevertheless have some rights that the law will protect. It is true that they could not recover in a suit at law for work, labor and material furnished in the repair of a house, which was destroyed by their own negligence, but when it comes to allowing a judgment to stand against them for an amount equal to their repairs in addition to what the house was worth before the repairs were made is so manifestly unjust that it shocks all sense of justice. It is enough that appellants have lost their work, labor and material and the appellees should be satisfied when their actual loss has been made good to them.

Damages have been defined as a sum of money adjudicated to be paid by one person to another as a compen-

sation for a loss sustained by the latter in consequence of an injury committed by the former.

Damages are based on the idea of a loss to be compensated. Damages are compensation, recompense or satisfaction in money. Does the appellee want more than his loss? It may be that the appellants were negligent, but punative damages cannot be awarded in cases of this kind.

In legal effect as far as the appellants were concerned in reference to the repairs they had placed on the house, they in some respects burned up their own property. They had an insurable interest in the property. They had rights under the mechanics' lien law. Therefore we are of the opinion that the court erred in instructing the jury as to the measure of damages in this case. This case is reversed with instructions to grant appellants' motion for a new trial in conformity with this opinion.